**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THE BANK OF NEW YORK MELLON f/k/a ) <br> THE BANK OF NEW YORK, AS TRUSTEE ) <br> FOR THE CERTIFICATE HOLDERS OF ) <br> CWABS, INC., ASSET-BACKED ) <br> CERTIFICATES, SERIES 2007-7, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MILTON HOLMES, JANE DOE, CURRENT ) <br> SPOUSE OR CIVIL UNION PARTNER, ) <br> IF ANY, OF MILTON HOLMES, ) <br> UNKNOWN OWNERS, GENERALLY, and ) <br> NON-RECORD CLAIMANTS, ) <br> ) <br> Defendants. ) | No. 14-cv-04440 <br><br> Judge Andrea R. Wood |

**MEMORANDUM OPINION**

Plaintiff Bank of New York Mellon, formerly known as Bank of New York, as Trustee for the Certificate Holders of CWABS Inc., Asset-Backed Certificates, Series 2007-7 ("BONYM") claims that it is the owner of a mortgage loan note entered into with Defendant Milton Holmes in 2007. In April 2012, a third party attempted to discharge Holmes's debt with a personal check in the amount of $97,756.53. Before the check cleared, the loan servicer unwisely credited the payment to Holmes's loan account and issued a release. The loan servicer subsequently discovered that the check had bounced and attempted to stop the recording of the release but was unable to stop the recording in time. The release was ultimately rescinded and the rescission was recorded. BONYM now asserts that Holmes is in default and that BONYM is entitled to foreclose on the mortgage. In response, Holmes, proceeding *pro se*, claims that he has paid off the mortgage. He has filed a counterclaim seeking to quiet title on the mortgaged

property. Presently before this Court are BONYM's motion for summary judgment on its foreclosure claim (Dkt. No. 92) and BONYM's motion for summary judgment on the remaining portion of Holmes's counterclaim (Dkt. No. 93). Holmes has opposed the motions. For the reasons explained below, both summary judgment motions are granted.

## BACKGROUND

On May 14, 2014, BONYM brought a complaint for foreclosure and other relief against Holmes in Illinois state court. (Dkt. No. 1 at 5–9). Holmes removed the action to federal court. (Dkt. No. 1 at 1–3). Subsequently, on October 15, 2014, Holmes filed a *pro se* answer to the complaint with affirmative defenses and a counterclaim. (Dkt. No. 9). On November 25, 2014, the prior judge in this action remanded the action to state court based on a lack of jurisdiction. (Dkt. No. 15). On December 24, 2014, Holmes moved to vacate the remand order. (Dkt. No. 20). On January 27, 2015, the instant action was reassigned to the undersigned judge. (Dkt. No. 28). On September 30, 2015, this Court granted Holmes's motion to vacate the remand order and reinstated the instant action. (Dkt. No. 35). BONYM moved to dismiss the counterclaim for failure to state a claim. (Dkt. No. 42). The Court in reviewing the counterclaim construed it to include both fraud claims and a claim seeking to quiet title. (Dkt. No. 61). On August 29, 2016, the Court granted the motion to dismiss the fraud claims, and denied the motion to dismiss the quiet-title claim. (Dkt. No. 61). With respect to the latter, Court concluded that because Holmes had a written release indicating that he owed no more money, whether Holmes still owed the amounts claimed by BONYM was an evidentiary issue beyond the scope of the pleadings. After discovery, BONYM filed the instant summary judgment motions. Unless otherwise noted, the following facts are either undisputed or deemed to be undisputed for the purposes of those motions pursuant to Local Rule 56.1.

On March 30, 2007, America's Wholesale Lender ("AWL") loaned Holmes $103,500.00 ("Loan"). (Pl.'s Statement of Material Facts in Support of Motion for Summary Judgment on the Foreclosure Claim ("F. SOF.") ¶ 4, Dkt. No. 92-2). The Loan was secured by a property ("Property") located at 8825 S. Morgan Street, Chicago, Illinois 60620. (F. SOF. ¶ 4). In exchange for the Loan, Holmes executed a promissory note ("Note") in favor of AWL and its successor Note holders. (F. SOF. ¶ 5); (Pl.'s Statement of Material Facts in Support of Motion for Summary Judgment on the Counterclaim ("CC. SOF") ¶ 2, Dkt. No. 95); (Milton Holmes Deposition ("Homes Dep.") at 4). To provide security for the Note, Holmes granted a mortgage lien against the Property ("Mortgage") to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for AWL and its successors and assigns. (F. SOF. ¶ 6); (CC. SOF. ¶ 3); (Holmes Dep. at 5).

Bank of America, N.A. ("BANA") and/or its predecessors serviced the Loan from its origination until April 15, 2015. (Tiffany Barnfield Affidavit ("Barn. Aff.") ¶ 9, Dkt. No. 95-2). On March 29, 2012, Holmes sent BANA correspondence, indicating that a third party named Shawn L. Dorsey was given permission to discharge Holmes's debt in the amount of $97,756.53. (*Id.* ¶ 10); (Dkt. No. 95-2 at 10). On April 3, 2012, BANA received a personal check ("Check") with check number 0807 that was executed by Dorsey in the amount of $97,756.53 and dated March 29, 2012. (Barn. Aff. ¶ 11); (CC. SOF. ¶ 7); (Dkt. No. 95-2 at 13). In accordance with its practices at that time, BANA promptly processed the payment and posted it to Holmes' Loan account on April 4, 2012. (Barn. Aff. ¶ 12); (CC. SOF. ¶ 8). Holmes was also provided with a release ("Release"). (Dkt. No. 101 at 3). In light of the processed payment, BANA submitted a request to its e-recording agent to record the Release. (Barn. Aff. ¶ 13); (CC. SOF. ¶ 9). But then, on April 9, 2012, the Check was returned by the remitter's bank because it was associated with a

closed account. (Barn. Aff. ¶ 14); (CC. SOF. ¶ 10). On April 13, 2012, BANA reversed the payoff and the Loan was reinstated as active. (Barn. Aff. ¶ 20); (CC. SOF. ¶ 17). BANA attempted to halt the recording of the Release, but it had already been recorded on April 11, 2012. (Barn. Aff. ¶ 21); (CC. SOF. ¶ 18–19); (Dkt. No. 101 at 3). On June 1, 2012, Holmes did not make a scheduled payment on the Loan and did not make any scheduled payment thereafter. (CC. SOF. ¶ 27); (Holmes Dep. at 27). Holmes contends that he made no further payments because he believed that the Loan had been paid off. (Holmes Dep. at 27). BONYM contends that the Release was rescinded and that the rescission was recorded on July 5, 2012. (Barn. Aff. ¶ 24); (CC. SOF. ¶ 22). On October 29, 2012, MERS assigned the Mortgage to BONYM. (F. SOF. ¶ 7).

BONYM asserts that Holmes is in default and therefore it is entitled to foreclose on the Mortgage. (F. SOF. ¶ 8). According to BONYM, the amount due and owing as of March 7, 2017 is $158,051.83. (Tracy A. Sirmans Affidavit ("Sirmans Aff.") Dkt. No. 92-2 Exhibit A). BONYM has filed a motion for summary judgment on its foreclosure claim and a motion for summary judgment on the remaining counterclaim. Holmes has filed only one opposition brief. (Dkt. No. 100). It is not clear whether he intended the opposition brief to respond to one or both of the summary judgment motions. Since he is proceeding *pro se*, the Court will liberally construe the arguments in his opposition brief and apply them equally to both motions.

## DISCUSSION

Under Federal Rule of Civil Procedure 56, "a party may move for summary judgment, identifying each claim or defense—or part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." *Id.* While inferences drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," those inferences must be supported by more than just "speculation or conjecture." *Matsushita Elec. Indus. Co., Ltd. v. Zenish Radio Corp*, 475 U.S. 574, 587 (1986); *see also Herzog v. Graphic Packaging Intern., Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (citing *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008)). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587.

## I. Local Rule 56.1

As an initial matter, neither of the parties has fully complied with Local Rule 56.1. When a motion for summary judgment is filed, the parties are required to comply with Local Rule 56.1. *See Boss v. Castro*, 816 F.3d 910, 914 (7th Cir. 2016) (stating that "[t]he district court's discretion to require strict compliance with Local Rule 56.1 has been upheld time and again"); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006) (indicating that "district courts are entitled to expect strict compliance with Local Rule 56.1"); *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (stating that the court has "repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1"). Although Holmes is proceeding *pro se*, he is still required to comply with Local Rule 56.1. *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (stating that although "courts are required to give liberal construction to *pro se* pleadings[,] . . it is also well established that pro se litigants are not excused from compliance with procedural rules"); *Stanton v. Dart*, 2018 WL 1240479, at *1 (N.D. Ill. 2018) (stating that "the requirements of LR 56.1 apply equally to *pro se* plaintiffs"); *Green v. Ibarra*, 2018 WL 894567, at *1 (N.D. Ill. 2018) (stating that "[a]lthough courts

5

construe *pro se* pleadings liberally, . . . a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules" such as Local Rule 56.1). The record also reflects that, in accordance with Local Rule 56.2, Holmes was sent a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," which explained to him Local Rule 56.1 and the need to comply with the rule. (Dkt. No. 94).

### A. Incorporation of Facts

Among the parties' violations of Local Rule 56.1, they have improperly incorporated into their Local Rule 56.1 filings facts from other documents and responses. In Paragraph 11 of BONYM's statement of facts in support of its motion for summary judgment on the foreclosure claim, BONYM states the following: "Those factual statements set forth in Plaintiff's Complaint, pursuant to 735 ILCS 5/15-1504(c) as well as the factual background recited in Plaintiff's Motion for Summary Judgment are incorporated herein by reference." (F. SOF . ¶ 11). Local Rule 56.1 does not authorize parties to cross reference facts in other documents or responses. To allow such a process would effectively nullify the requirement in Local Rule 56.1 that paragraphs must consist of "short numbered paragraphs," and render ineffectual the provision stating that there cannot be "more than 80 separately-numbered statements of undisputed material fact." LR 56.1. In addition, to allow BONYM to generally incorporate all the facts from entire documents would defeat the purpose of Local Rule 56.1, which is to provide clarity at the summary judgment stage regarding what facts are genuinely disputed. The judicial economy promoted by Local Rule 56.1 would be lost if a court and opponents were required to sift through additional documents or responses beyond the statement of facts and attempt to discern the relevant facts. *See Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) (explaining that "[b]ecause of the high volume of summary judgment motions and the benefits of clear

presentation of relevant evidence and law, [the court has] repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings"). To allow BONYM to incorporate allegations from a pleading would also defeat the requirement that a movant pursuing a motion for summary judgment must point to evidence to support the motion. Therefore, Paragraph 11 of BONYM's statement of facts in support of its motion for summary judgment on the foreclosure claim is stricken.

Holmes also improperly attempts to incorporate into his statement of additional facts information from other documents and his responses to BONYM's statement of facts. Instead of providing a statement of additional facts as required in Local Rule 56.1, Holmes states that he "reincorporates [his] objections to Plaintiffs' Statement of Facts" and states that his "disputed facts are attached in [a] separate affidavit." (Dkt. No. 102 at 3). The Court has considered Holmes' affidavit as evidence in this matter presented in opposition to the motions for summary judgment, but the affidavit is not a Local Rule 56.1 filing. Therefore, to the extent that Holmes sought to incorporate facts from his responses to BONYM's statement of facts or from his affidavit, that statement of additional facts is stricken.

### B. Support for Facts and Responses

The parties also fail to provide proper support for their facts and responses in their Local Rule 56.1 filings. Pursuant to Local Rule 56.1, each paragraph containing a statement of facts and any response to that paragraph that disputes such facts must be accompanied by a citation to the record or evidence. LR 56.1; *see also Barren v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 2016 WL 861183, at *1 (N.D. Ill. 2016) (stating that Local Rule 56.1 "requires movants to provide statements containing specific references to supporting materials, and failure to comply with L.R. 56.1 is a sufficient ground for courts to strike or disregard unsupported facts"); *Ammons*,

368 F.3d at 817–18 (explaining that "where a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial").

BONYM fails to properly provide support for its statements of facts. In Paragraph 1 of BONYM's statement of facts in support of its motion for summary judgment on the foreclosure claim, BONYM merely references "*Docket No. 1; Docket No. 35.*" (F. SOF . ¶ 1). BONYM does not reference the document or page number that BONYM is relying upon, even Docket Number 1 consists of several documents and is 92 pages long. (Dkt. No. 1). BONYM's general reference to such a docket entry does not comply with Local Rule 56.1. *See Ammons*, 368 F.3d at 817–18 (stating that "[c]itations to an entire transcript of a deposition or to a lengthy exhibit are not specific and are . . . inappropriate" and that "[a] court should not be expected to review a lengthy record for facts that a party could have easily identified with greater particularity"). In regard to Paragraph 1 of BONYM's statement of facts in support of its motion for summary judgment on the counterclaim, BONYM does not provide any citation to the record or evidence to support the facts in that paragraph. (CC. SOF. ¶ 1). Therefore, Paragraph 1 of BONYM's statement of facts in support of its motion for summary judgment on the foreclosure claim and Paragraph 1 of BONYM's statement of facts in support of its motion for summary judgment on the counterclaim are stricken.

Holmes also fails to provide citations to support his responses to BONYM's statement of facts in support of its motion for summary judgment on the foreclosure claim. In regard to BONYM's statement of facts in support of its motion for summary judgment on the foreclosure claim, Holmes responds to Paragraphs 6, 7, 9, and 10 by merely stating "Disputed" or provides arguments without any citation to the record or evidence. (Response to BONYM's statement of

facts in support of its summary judgment on the foreclosure claim ¶¶ 6, 7, 9, 10). Such facts are thus not properly disputed and are deemed to be admitted pursuant to Local Rule 56.1.

### C. Facts in Support of Summary Judgment on the Counterclaim

Finally, although Holmes filed a response to BONYM's statement of facts in support of its motion for summary judgment on its foreclosure claim, Holmes did not file any response to BONYM's separate statement of facts in support of its motion for summary judgment on the counterclaim. Therefore, all facts in BONYM's statement of facts fact in support of its motion for summary judgment on the counterclaim are deemed to be admitted pursuant to Local Rule 56.1 to the extent that such facts are properly supported by record evidence. *Green*, 2018 WL 894567, at *1 (stating that "[b]ecause [the plaintiff] has failed to properly respond to Defendant's Rule 56.1 Statement of Undisputed Material Facts, the Court accepts Defendant's 'uncontroverted version of the facts to the extent that it is supported by evidence in the record'") (quoting *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012)).

## II. Motion for Summary Judgment on the Foreclosure Claim

Turning now to the merits of the motions, BONYM argues that Holmes is in default and that BONYM is entitled to foreclose on the Mortgage. Holmes contends in response that the debt on the Loan was discharged and he presents the Release as evidence.

### A. Default on Loan

BONYM contends that Holmes breached the timely repayment requirement in the Note and Mortgage, and that BONYM is entitled to foreclose on the Mortgage. The parties do not dispute that Illinois state law applies in this diversity case. A foreclosure claim is "governed by the Illinois Mortgage Foreclosure Law." *Firstmerit Bank, N.A v. Walsh*, 2014 WL 883541, at *3 (N.D. Ill. 2014) (citing 735 ILCS 5/15–1501 *et seq.*). If a plaintiff bringing a foreclosure action

"attach[es] a copy of the mortgage and the note," the plaintiff has established a "*prima facie* case for mortgage foreclosure. . . ." *Id.* Once a *prima facie* case is established, "the burden shifts to the defendants to establish a defense." *Id.*; *see also* D*eutsche Bank Nat'l Tr. Co. for CDC Mortg. Capital Tr. 2003-HE3 v. Boyd*, 2015 WL 13611731, at *4 (C.D. Ill. 2015) (stating that "[u]nder Illinois law, a prima facie case for foreclosure is established with the introduction of the mortgage and note, after which the burden shifts to the mortgagor to prove any affirmative defense"); *Deutsche Bank Nat'l Tr. Co. v. Vargas*, 2014 WL 6835951, at *2 (N.D. Ill. 2014) (stating that "[a] mortgagee establishes a prima facie case for foreclosure with the introduction of the mortgage and note"). In the instant action, BONYM has attached a copy of the Mortgage and Note to the complaint and Holmes has not presented any legitimate objection to the authenticity of such attachments. (Complaint Exhibit A.)

Holmes argues that he paid off the Loan and thus has never defaulted on the Loan. Under Illinois law, a plaintiff need not establish "non-payment by the mortgagor" as part of the *prima facie* case. *Pan-Am. Life Ins. Co. v. Invex Holdings, N.V.*, 1997 WL 72078, at *2 (N.D. Ill. 1997). Once a *prima facie* case is established, any argument by the mortgagor that he made a payment "is an affirmative defense and thus the burden of production falls on the debtor." *Id.* BONYM has offered an affidavit prepared by Foreclosure Litigation Specialist Tracy A. Sirmans ("Sirmans") (Sirmans Aff. at 1–3). In the affidavit, Sirmans details the amounts due and owing on the Loan. *Id.* Sirmans has also attached supporting business records to the affidavit. (Dkt. No. 92-2 at 8–37). Sirmans indicates that the Holmes has failed to pay the amounts due under the Note and that the amount due and owing as of March 7, 2017 is a principal balance of $97,382.83, plus interest in the amount of $47,033.93, plus an escrow advance in the amount of

$13,609.07, plus a property inspection cost in the amount of $26.00, for a total amount of $158,051.83. (Sirmans Aff. at 2–3).

Despite the business records provided in support of BONYM's motion, Holmes maintains that he has paid off the Loan. Holmes testified at his deposition that, in 2012, he received a statement from BANA that informed him the remaining balance on the Loan was only $48.57 and that he proceeded to pay that final outstanding amount. (Holmes Dep. at 6–7, 24). BONYM concedes that in April 2012, Holmes did in fact tender a $48.57 payment. (CC. SOF. ¶ 23). Holmes, however, fails to provide any evidentiary support to back up his understanding that he only owed $48.57 in April 2012. Holmes has not produced the statement he claimed showed an outstanding balance of only $48.57. (Holmes Dep. at 10–11, 28). Nor could Holmes produce any evidence of payments that would have reduced his outstanding balance to that minimal amount or even explain how his balance became so low. (Holmes Dep. at 24–29). It is true that at the summary judgment stage a court does not assess the credibility of witnesses. *Khan v. Midwestern Univ.*, 879 F.3d 838, 840 (7th Cir. 2018) (stating that a court reviewing evidence at the summary judgment stage "must resist the trap of assessing the credibility of witnesses, choosing between competing inferences or balancing the relative weight of conflicting evidence"); *Deets v. Massman Const. Co.*, 811 F.3d 978, 982 (7th Cir. 2016) (explaining that a "credibility determination may not be resolved at summary judgment"). This case, however, does not present an issue of credibility. At the summary judgment stage, a plaintiff can no longer rely on his allegations and unsubstantiated assertions without any factual support. *See Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (stating that "[a]s the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence

showing that there is a genuine dispute of material fact for trial") (internal quotations omitted) (quoting *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)); *Whitaker v. Wisconsin Dep't of Health Servs.*, 849 F.3d 681, 684 (7th Cir. 2017) (explaining that in order to defeat the defendant's motion for summary judgment, the plaintiff needed to "present evidence that, if believed by a trier of fact, would establish each of" the necessary elements); *Herzog*, 742 F.3d at 806 (stating that while non-movant "is entitled, as the nonmoving party, to all reasonable inferences in her favor, 'inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion'") (quoting *Tubergen*, 517 F.3d at 473).

Holmes does submit his affidavit in opposition to the summary judgment motion. In that affidavit, Holmes claims that he made payments on the Loan and that on March 29, 2012, he "made final payment to" BANA. (Holmes Affidavit ¶ 6–7). The mere fact that Holmes' affidavit is self-serving is not a sufficient reason to disregard the evidence. *See Whitaker*, 849 F.3d at 685–86 (explaining that "self-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment" and that the court has "taken pains to reject the misconception that evidence presented in a self-serving affidavit is never sufficient to thwart a summary judgment motion") (internal quotations omitted) (quoting *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 459–60 (7th Cir. 2014) and *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003)). In addition, Holmes, as the non-moving party, is entitled to have reasonable inferences made in his favor. *Herzog*, 742 F.3d at 805. Holmes, however, does not identify any facts or evidence to support his conclusory assertion that he made a final payment on the Loan or to make a reasonable inference in his favor on that point. *See Whitaker*, 849 F.3d at 686 (finding that conclusory declaration that was not supported by evidence did not create a genuinely disputed fact). Holmes has not offered any evidence that would legitimately call into question the accuracy of BONYM's assertion that

Holmes stopped making payments on the Loan in June 2012 or that he still owes a total of $158,051.83. Based on the undisputed facts, Holmes has defaulted on the Loan.

B.    Release

Holmes nonetheless contends that he holds a valid release from the debt on the Loan. It is undisputed that the basis for the issuance of the Release was the receipt of the Check by BANA. (CC. SOF. ¶ 7–9). Holmes states in a conclusory fashion in opposition to the motions for summary judgment that on March 29, 2012, BANA "received certified mail . . . funds in the amount [of] $97,756.53 to pay-off balance." (Dkt. No 100 at. 3). Holmes, however, cites no evidence to show that BANA ultimately received any such funds. BONYM admits that BANA received the Check from Dorsey with check number 0807 on April 3, 2012. (CC. SOF. ¶ 11). The Loan summary documents show that on April 4, 2012, after the receipt of the Check, a payment of $97,756.53 was credited to Holmes' Loan account. (Dkt. No. 95-2 at 22). However, the Loan summary documents also show that the $97,756.53 was subsequently reinstated to the account on April 13, 2012. *Id.* Pursuant to Local Rule 56.1, Holmes has not disputed that the Check was returned unpaid or disputed BANA's assertion that it never received the designated funds from the Check. (CC. SOF. ¶ 10).

BONYM has also presented an affidavit from Tiffany Barnfield ("Barnfield"), an Assistant Vice President, Senior Operations Manager for BANA, indicating that the Check was returned unpaid (Barn. Aff. ¶ 14). BONYM has produced a notification with a copy of the returned check and the phrase "CLOSED ACCOUNT" at the top of the notice. (Dkt. No. 95-2 at 13). Also, following the phrase "RETURN REASON" is the phrase "CLOSED ACCOUNT." (Dkt. No. 95-2 at 13). BONYM has also produced a document with servicing notes that state "RECD AC RETURNED PMT IAO 97756.53 CK# 0807 CK." (Dkt. No. 95-2 at 29). The

servicing notes reference Dorsey's 0807 check number and Barnfield explains that the notations are shorthand for "received account closed returned payment in the amount of" $97,756.53 for check number 0807. (Barn. Aff. ¶ 15). Holmes has not contested the interpretation of those notes. And he also has not presented any evidence to show that the Check was honored or that the funds were paid to BANA, nor has he even argued such a point in his opposition to the instant motions. In addition, pursuant to Local Rule 56.1, Holmes admits that the Check bounced and that BANA did not receive the funds. (CC. SOF. ¶ 10–13). Based upon such evidence, no reasonable trier of fact could conclude other than that Dorsey's check bounced and BANA never received the $97,756.53.

Holmes touts his written Release as evidence of the discharge of his debt. But it is undisputed that BANA never received the funds from the Check. BONYM has also shown that after discovering its mistake, BANA took the necessary steps to rescind the Release. (CC. SOF. ¶ 22). In addition, pursuant to Local Rule 56.1, it is undisputed that BANA recorded the rescission. *Id.* Indeed, BONYM has submitted a copy of the recorded rescission. (Dkt. No. 71-1 at 2–3). Holmes also acknowledges the rescission in opposition to the motions for summary judgment. (Dkt. No. 100 at 4). It is understandable that Holmes upon receiving the written Release could have believed for a moment that he did not need to make further payments on the Loan and that he was forever free from any debt owed on the Loan. BANA is a sophisticated banking institution and should have had procedures in place to prevent such a mistake and resulting confusion to a consumer. Holmes must, however, accept some responsibility for the fact that the Check used to attempt to pay BANA was not a valid check written on an open account. It was wishful thinking on the part of Holmes to believe that such a significant debt could be discharged absent any actual transfer of funds. The Release thus does not excuse Holmes from liability.

14

Based on the above, no reasonable trier of fact could conclude other than that BANA properly rescinded the Release and that the Release is no longer valid.

### C. Grace Period

Holmes further argues in response to the motions for summary judgment that there is no record that he was sent "the required grace period notice pursuant to 735 ILCS 5/15-1502.5(b), (c) . . . ." (Dkt. No. 100 at 4); s*ee also Bank of Am., N.A. v. Adeyiga*, 29 N.E.3d 60, 75 (Ill. App. Ct. 2014) (explaining that pursuant to 735 ILCS 5/15-1502.5, a grace period notice must be sent to a borrower). The grace period requirement is an affirmative defense. *See PNC Bank, Nat. Ass'n v. Zubel*, 24 N.E.3d 869, 874–75 (Ill. App. Ct. 2014) (stating that "[a] mortgagee establishes a prima facie case for foreclosure with the introduction of the mortgage and note, after which the burden of proof shifts to the mortgagee to prove any applicable affirmative defense"); *see also, e.g., Bayview Loan Servicing, LLC v. Szpara*, 46 N.E.3d 950, 955 (Ill. App. Ct. 2015) (treating grace period notice as an affirmative defense). Holmes did not plead the non-compliance with the grace period as an affirmative defense with his answer. (Dkt. No. 9 at 6–8). Holmes thus cannot raise the grace period statute at this late juncture. Based on the above, BONYM's motion for summary judgment on the foreclosure claim is granted.

### III. Motion for Summary Judgment on the Counterclaim

BONYM also moves for summary judgment on the remaining portion of Holmes's counterclaim. Holmes contends that he has been discharged from any debt on the Loan and seeks to quiet title to the Property. An action to quiet title brought under Illinois law "'is an equitable proceeding in which a party seeks to remove a cloud on his title to the property.'" *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 689 (7th Cir. 2015) (quoting *Hoch v. Boehme*, 990 N.E.2d 362, 374 (Ill. App. Ct. 2013)). As explained above, the undisputed facts show that other than the

$48.57 payment, Holmes never actually paid any funds toward the debt on the Loan and that the Release was properly rescinded. Thus, the undisputed facts show that there is a valid encumbrance on the Property. Holmes has not pointed to evidence of any improper cloud on the title to the Property. Moreover, the injunctive relief sought by Holmes in connection with his quiet title claim is not a separate legal claim. To the extent that the counterclaim seeks equitable relief, the equities in this case favor BONYM. The undisputed facts show that Holmes owes the amounts specified by BONYM, which are significant. Holmes was justifiably confused when he received the Release, but BONYM has shown that it subsequently informed Holmes of the mistake and sought payment of the Loan. It would be unfair to allow Holmes to avoid his debt and he has not shown that honoring his contractual obligations would be inequitable in this instance.

Holmes also continues to assert that BONYM is committing fraud because, according to Holmes, BONYM lacks standing and there were irregularities in the assignment of the note. Holmes contends that the "assignment was fraudulent," and accuses BONYM of "fraud upon the Court." (Dkt. No. 100 at 7, 9). Such arguments relate the fraud claims presented in the counterclaim that were previously dismissed. To the extent that Holmes's arguments can be liberally construed as a motion for reconsideration, Holmes has not shown that the Court erred in dismissing the claims. The Court notes that in granting in part the motion to dismiss, the Court stated that the dismissal was without prejudice to Holmes' right to assert in defense of the foreclosure claim that BONYM is not the lawful holder of his debt. (Dkt. No. 61 at 2). To the extent that Holmes presented his arguments concerning standing and the assignment, he did not state a valid counterclaim. Holmes, however, was not barred from raising such issues as a defense at the summary judgment stage. Yet no evidence has been presented by Holmes that

would enable a reasonable trier of fact to conclude that BONYM is not to proper holder of the Note. The undisputed facts show that the Note was endorsed in blank, that BONYM possesses the Note, and the Note was attached to the complaint. BONYM has also shown that the assignment of the Mortgage was of record at the time that the instant action began. (Dkt. No. 1 at 36).

Holmes also improperly attempts to introduce new counterclaims in opposition to the summary judgment motions. He argues, for example, that BONYM failed to comply with regulations under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* (Dkt. No. 100 at 4–5, 10). However, the only remaining counterclaim in this matter is the quiet-title counterclaim. Any new counterclaims introduced by Holmes at this juncture are untimely. Therefore, BONYM's motion for summary judgment on the counterclaim is granted.

## CONCLUSION

For the reasons stated above, BONYM's motion for summary judgment on the foreclosure claim (Dkt. No. 92) and its motion for summary judgment on the remaining counterclaim (Dkt. No. 93) are both granted. BONYM is ordered to submit a proposed judgment of foreclosure and order of sale to the Court's proposed order e-mailbox by April 9, 2018.

ENTERED:

Dated: March 31, 2018

———————————————
Andrea R. Wood
United States District Judge